# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                                                  CR No. 16-1701 JCH

AARON MERCADO-GRACIA,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Aaron Mercado-Gracia's (i) Motion for Production of Canine Records and for an In-Court/Out-of-Court Demonstration of Effectiveness (ECF No. 48), and (ii) Motion for Production of Records Regarding Aircrafts in this Matter (ECF No. 49). The Court having considered the motions, briefs, arguments, and relevant law concludes that the motions should be denied.

**I.    BACKGROUND**

According to the Government, on March 25, 2016, New Mexico State Police ("NMSP") Officer Ronald Wood, while traveling westbound on Interstate-40 with his drug-detection dog Arras, stopped Defendant Mercado-Gracia for speeding. In the course of the detention, Officer Wood deployed Arras on the exterior of the vehicle. Arras allegedly alerted to the vehicle, a fact that Defendant disputes, resulting in Officer Wood searching the interior of the vehicle and discovering approximately 7.25 pounds of heroin and a handgun therein.

The United States subsequently charged Defendant in a two-count Indictment (ECF No.

12) for Possession with Intent to Distribute 1 Kilogram and More of Heroin under 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and Using and Carrying a Firearm During and in Relation to a Drug Trafficking Crime and Possessing a Firearm in Furtherance of Such Crime under 18 U.S.C. § 924(c). On July 10, 2017, Defendant filed a motion to suppress (ECF No. 47) challenging the legality of the detention and search, as well as the two motions for production at issue here.

## II.     ANALYSIS

### A.  Motion for Production of Canine Records

Citing Federal Rule of Criminal Procedure 16(a)(1)(E), Defendant requests Arras' certification, training, medical history, and reliability records, arguing they are relevant and material to the issue of probable cause to search the vehicle and he needs them to prepare for the hearing on his motion to suppress. Def.'s Mot. for Prod. of Canine Records 2, ECF No. 48. Defendant filed a Notice of Intent to Offer Expert Testimony of Andre Falco Jimenez, a purported expert in police canine training and certification, to testify at the hearing on the motion to suppress. Notice, ECF No. 67. Defendant asserts that Mr. Jimenez will require the requested canine records to fully form his opinion in the case. Def.'s Reply 1, ECF No. 68.

The Government in response attached certification documents to show that Officer Wood and Arras participated in and completed the U.S. Customs and Border Protection Canine Detection Team Certification on September 24, 2013; they were re-certified each year; and they were re-certified through December 8, 2017, for the odors of cocaine, marijuana, heroin, and methamphetamines, and their derivatives. *See* Government's Ex. 1, ECF No. 55-1. The documentation includes scores for Arras on October 30, 2013, and on December 8, 2016. *See id.* at 8 and 12 of 13. Although the United States acknowledges that the test scores during the last certification "were within the average range," it argues that the remaining documents sought are

2

not relevant and are protected from disclosure by the law enforcement privilege because they contain confidential and sensitive law enforcement information. United States' Resp. 2, ECF No. 55.

As relevant here, Rule 16(a)(1)(E) provides that a defendant, upon request, is entitled to documents and data if the item is material to preparing the defense or the government intends to use the item in its case-in-chief at trial. Fed. R. Crim. P. 16(a)(1)(E)(i)-(ii). "It is firmly established in this circuit that alerts by reliable drug-detection dogs provide probable cause to conduct a search." *United States v. Villa*, 348 F. App'x 376, 379 (10th Cir. Oct. 6, 2009) (and cases cited therein). The Supreme Court has "rejected rigid rules" or a strict evidentiary checklist when conducting probable cause analyses. *Florida v. Harris*, 568 U.S. 237, 244 (2013). Consequently, the *Harris* Court rejected a rule requiring the State to produce comprehensive documentation of a drug detection dog's field reliability. *See id.* at 244-45. The Supreme Court explained in detail the reasons why a dog's field performance is of limited utility and why the better measure of a dog's reliability comes in controlled testing environments:

> If a dog on patrol fails to alert to a car containing drugs, the mistake usually will go undetected because the officer will not initiate a search. Field data thus may not capture a dog's false negatives. Conversely (and more relevant here), if the dog alerts to a car in which the officer finds no narcotics, the dog may not have made a mistake at all. The dog may have detected substances that were too well hidden or present in quantities too small for the officer to locate. Or the dog may have smelled the residual odor of drugs previously in the vehicle or on the driver's person. Field data thus may markedly overstate a dog's real false positives. By contrast, those inaccuracies—in either direction—do not taint records of a dog's performance in standard training and certification settings. There, the designers of an assessment know where drugs are hidden and where they are not—and so where a dog should alert and where he should not….
>
> For that reason, evidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert. If a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search. The same is true, even in the

3

absence of formal certification, if the dog has recently and successfully completed a training program that evaluated his proficiency in locating drugs. After all, law enforcement units have their own strong incentive to use effective training and certification programs, because only accurate drug-detection dogs enable officers to locate contraband without incurring unnecessary risks or wasting limited time and resources.

*Id.* at 245-47.

The Supreme Court nonetheless acknowledged a defendant's right to challenge the evidence of a dog's reliability through cross-examination of the testifying officer or by introducing his own fact witness. *Id.* at 247. The Court noted that evidence of a dog's or handler's history in the field may sometimes be relevant and explained the process to resolve questions of the reliability of a dog alert as follows:

> The court should allow the parties to make their best case, consistent with the usual rules of criminal procedure. And the court should then evaluate the proffered evidence to decide what all the circumstances demonstrate. If the State has produced proof from controlled settings that a dog performs reliably in detecting drugs, and the defendant has not contested that showing, then the court should find probable cause. If, in contrast, the defendant has challenged the State's case (by disputing the reliability of the dog overall or of a particular alert), then the court should weigh the competing evidence…. The question—similar to every inquiry into probable cause—is whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime.

*Id.* at 247-48.

The United States has provided documentary evidence of Arras's training and certification, and has stated that it will call NMSP Canine Officer Ronald Wood to testify at the hearing on the motion to suppress. Defense counsel will therefore have an opportunity to cross-examine Officer Wood concerning Arras's reliability. In determining whether Defendant has shown an entitlement to further discovery regarding this issue, the Court finds the analysis of the Honorable M. Christina Armijo in a similar context persuasive:

> For the purpose of establishing probable cause during Border Patrol field

> operations, it follows that the reliability of a canine inspection generally can be determined on the basis of testimony provided by a dog's handler and/or a representative of the certifying agency, in conjunction with an inspection of the document(s) that identify the date on which the dog and handler were certified, their certification score, and the name of the certifying agency. Through such testimony and inspection of the certification documents, defendants are provided with a fair opportunity to make a threshold showing that the dog and handler were not certified at the time of the canine inspection at issue, or that there is a specific reason to question the validity or reliability of the certification. Where neither the witness' testimony, other tendered evidence, nor the certification documents establish such a threshold showing, however, no legitimate purpose is served by requiring the Government to produce additional supporting documentation in response to a blanket request for all records relating in any way to the training or past performance of a dog and its handler.

*United States v. Morales*, 489 F.Supp.2d 1250, 1261-62 (D.N.M. 2007).

Defendant has not yet shown that he is entitled to the additional documentation regarding Arras's medical history, other training history documents, or an in-court/out-of-out demonstration of effectiveness. Accordingly, the Court will deny the motion for pre-hearing production of the materials. *Cf. Villa*, 348 F. App'x at 380 (holding that district court did not abuse its discretion in refusing to order additional discovery of documentary evidence regarding dog's reliability where defendant had certification evidence and was able to cross examine dog handler*); United States v. Gonzalez-Acosta*, 989 F.2d 384, 389 (10th Cir. 1993) (affirming district court's denial of defendant's motion for pretrial production of drug detection dog's training records, veterinary records, false-positive/false-negative alert records, and all records establishing dog's ability to smell because defense counsel extensively cross-examined handler on dog's reliability and documents were not relevant given dog was certified on day in question).

Nevertheless, if Defendant identifies at the hearing any irregularities or shortcomings in the history or performance of Arras or his handler that would call their reliability into question, the Court may revisit its ruling on the motion for production. *See United States v. Purvis*, No. 09-40098-JAR, 2010 WL 1816336, at *3 (D. Kan. May 4, 2010) ("Absent some additional showing

of materiality, the government need not produce any further information than the certification and training records for Cliff…. Such a showing could be made if the dog has a poor accuracy record, if the dog's training was substandard, if the dog's health was in question, or if the circumstances of the search caused the Court to question the dog's reliability.").[1]

### B. Motion for Production of Aircrafts Records

Defendant requests an order directing the United States to produce all records relating to any and all reports, dispatch records, and other investigative documents regarding the use of aircrafts in this case. Defendant's request is based on the purported fact that Officer Wood, when pursuing Defendant for an alleged speeding infraction, called out a 10-94 and a 10-95, which means "State Police Aircraft Switching to FAA Frequency Location" and "State Police Aircraft on the Ground and Secure at ___," respectively. Def.'s Mot. for Aircraft Records 1, ECF No. 49. Defendant contends he is entitled to the information under *Brady v. Maryland*, 373 U.S. 83 (1963), because it is likely his constitutional rights were violated by the aircraft in this case.

The Government asserts that Officer Wood will testify that he did not call out a 10-94 or 10-95 code; rather, the operator said "10-4" to confirm sending a tow truck and the operator spoke to handler canine 5. The United States contends that Officer Wood did not use any aircraft in this matter, and no aircraft records exist.

In reply, Defendant attached a heavily redacted Computer Aided Dispatch Incident Recall report he received in response to a New Mexico Inspection of Public Records Act request (ECF No. 69-1). Defendant contends that only this report can clarify whether officers were communicating with an aircraft in this case.

The Supreme Court held in *Brady* "that the suppression by the prosecution of evidence

---
[1] Given the Court's determination that Defendant has not yet shown the requested documentation is material and relevant to the defense, the Court need not determine whether the law enforcement privilege applies.

favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. To establish a *Brady* violation, the defendant must show that (1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) the evidence was material to the defense. *United States v. Beers*, 189 F.3d 1297, 1303 (10th Cir. 1999). *Brady* only requires disclosure of information in the government's possession or of which it has knowledge, whether actual or constructive. *Id.* at 1304. Defendant has not met his burden to show that United States has knowledge or possession of aircraft records or that the records are material to his defense. The Court will therefore deny Defendant's motion.

**IT IS THEREFORE ORDERED** that

1. Defendant's Motion for Production of Canine Records and for an In-Court/Out-of-Court Demonstration of Effectiveness (**ECF No. 48**) is **DENIED** without prejudice; and

2. Defendant's Motion for Production of Records regarding Aircrafts in this Matter (ECF No. 49) is **DENIED**.

_____
**UNITED STATES DISTRICT JUDGE**