IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                                             CR No. 16-1701 JCH

AARON MERCADO-GRACIA,

      Defendant.


**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendant Aaron Mercado-Gracia's request for a pretrial *Daubert* hearing set forth in his Response in Opposition to Government's Notice of Intention to Offer Expert Testimony (ECF No. 113). The Court, having considered the notices, briefs, evidence, applicable law, and otherwise being fully advised, concludes that Defendant's request for a pretrial *Daubert* hearing should be granted as to the admissibility of the testimony of Douglas Lloyd and Thomas Handley regarding latent print analyses, but will be denied as to the testimony of Alexandra Moninger and Undersheriff Rudy Mora.

    **I.**      **BACKGROUND**

According to the Government, on March 25, 2016, New Mexico State Police ("NMSP") Officer Ronald Wood, stopped Defendant Mercado-Gracia for speeding. In the course of the detention, Officer Wood deployed his drug detection dog on the exterior of the vehicle, which alerted to the vehicle, resulting in Officer Wood searching the interior of the vehicle and discovering approximately 7.25 pounds of heroin and a handgun therein. The United States

subsequently charged Defendant in a two-count Indictment (ECF No. 12) for Possession with Intent to Distribute 1 Kilogram and More of Heroin under 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and Using and Carrying a Firearm During and in Relation to a Drug Trafficking Crime and Possessing a Firearm in Furtherance of Such Crime under 18 U.S.C. § 924(c).

On September 7, 2016, the United States filed its First Notice of Intent to Call Expert Witness for Forensic Chemist Alexandra Moninger who will testify regarding the chemical composition of the substance seized in this case, identifying it as heroin in a weight exceeding more than 1 kilogram. Notice 1-2, ECF No. 31. The Government proffers that Ms. Moninger determined the contents of the seized package using gas chromatography, gas chromatography/mass spectrometry, infrared spectroscopy, a marquis color test, and nuclear magnetic resonance spectroscopy. *Id.* at 2.

On August 21, 2017, the United States filed a Notice of Intent to Call Expert Witnesses Douglas Lloyd and Thomas Handley on Latent Print Analysis (ECF No. 65). Douglas Lloyd and Thomas Handley work for the Department of Homeland Security Laboratories and Scientific Services as forensic scientists. *Id.* at 1. The Government proffers that Mr. Handley will testify that he processed the firearm and magazines seized in this case for latent prints using a process where he fumed with superglue under negative pressure and stained using rhodamine 6G the firearm and magazines, later viewing the items with a forensic laser and photographing the latent prints. *Id.* at 2. Mr. Lloyd will testify that he viewed the digital images photographed by Mr. Handley, compared them to Defendant's fingerprint images, and identified fingerprints of value 4A and 5A as the right thumb and right index finger of Defendant. *Id.*

The Government additionally filed a Notice of Intent to Offer Opinion Testimony of Law Enforcement Witness Sheriff Rudy Mora (ECF No. 112). It proffered that Undersheriff Mora

would testify that the amount of heroin seized is consistent with distribution, and opine as to the street value of the seized heroin, his knowledge of its manufacturing origins, its properties and nature, how it is used and sold, how it is packaged, general drug trafficking geographical routes and patterns, the frequent use of third party or borrowed vehicles for narcotics transportation, and tools of the trade that include firearms. Notice 1-2, ECF No. 112.

On July 2, 2018, Defendant filed a response in opposition to all four expert witnesses and requested a pre-trial *Daubert* hearing for all the expert witnesses. Def.'s Resp., ECF No. 113. Defendant objects to Ms. Moninger because her resume does not state from which University she obtained her degree in Forensic Science, and her analysis occurred only two weeks after her certification as a forensic scientist and five months from the time she began work at the New Mexico Department of Public Safety. *See id.* at 3. Defendant asserts that he has no report from either Mr. Lloyd or Mr. Handley from which to assess the bases and reasons for their respective opinions. *Id.* Defendant objects to Undersheriff Mora's opinions because the jury could reach a conclusion of weight without the need for expert testimony and that the arresting officer's testimony is sufficient on the rest of the factual issues, rendering the expert testimony unnecessary and cumulative. *See id.* at 4-5. Finally, Defendant argues that Undersheriff Moya's opinions as to drug use and firearms should be excluded under Rule 403 as unnecessary, cumulative, and unfairly prejudicial. *Id.* at 4-5.

The United States asserts in response that a pretrial hearing is not necessary because none of the testimony involves any new scientific theory or any novel idea and this type of testimony has been widely accepted by the courts. United States' Reply 4, ECF No. 116.

II. **ANALYSIS**

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Fed. R.

Evid. 702. A witness, qualified by knowledge, skill, experience, training, or education, may offer an opinion so long as the following conditions are met:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based upon sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

*Id.* Rule 702 incorporates the principles of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), to ensure that proffered expert testimony, even non-scientific and experience-based expert testimony, is both relevant and reliable. Fed. R. Evid. 702, 2000 Amendments. "The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595.

To determine whether an expert opinion is admissible, the district court performs the following two-step analysis: (1) the court must determine whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion, and (2) if the expert is so qualified, the court must determine whether the expert's opinion is reliable under the principles set forth in *Daubert*. *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). *Daubert*'s general holding setting forth the judge's gate-keeping obligation applies not only to testimony based on scientific knowledge, but also to testimony based on technical or other specialized knowledge. *Kumho Tire*, 526 U.S. at 141. The proponent of the expert bears the burden by a preponderance of the evidence to establish that the requirements for admissibility have been met. *See United States v. Nacchio*, 555 F.3d 1234, 1241, 1251 (10th Cir. 2009).

Trial courts have equally broad discretion in both determining the reliability and admissibility of expert testimony and in deciding how to assess an expert's reliability, including

what procedures to use in making that assessment. *United States v. Velarde*, 214 F.3d 1204, 1208-09 (10th Cir. 2000). So long as the district court has enough evidence to perform its duty in assessing the relevance and reliability of an expert's proposed testimony, a hearing is not required. *See United States v. Call*, 129 F.3d 1402, 1405 (10th Cir. 1997). Like other preliminary questions of admissibility, *Daubert* challenges are subject to Federal Rule of Evidence 104, which provides that courts must conduct a hearing outside the presence of a jury when justice so requires. *United States v. Nichols*, 169 F.3d 1255, 1263 (10th Cir. 1999) (quoting Fed. R. Evid. 104(c)). The decision whether to hold a pretrial hearing is reviewed for an abuse of discretion. *Id.*

### 1. Alexandra Moninger

Defendant does not challenge the methodology used by Ms. Moninger in this case. Nor does he contend that the chemical testing used is new or novel. Rather, Defendant's objections to Ms. Moninger are limited to her qualifications.

Rule 702 requires the trial court to determine whether the witness is qualified as an expert by knowledge, skill, experience, training, or education. Rule 702 sets a "liberal standard" for qualifying a witness as an expert. *United States v. Gomez*, 67 F.3d 1515, 1526 (10th Cir. 1995). "Rule 702 only requires that an expert possess 'knowledge, skill, experience, training, or education' sufficient to 'assist' the trier of fact, which is 'satisfied where expert testimony advances the trier of fact's understanding to any degree.'" *Robinson v. Geico Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006) (emphasis added) (internal quotation marks omitted). The trial court has broad discretion to determine the qualifications of a witness. *United States v. Vargas*, 471 F.3d 255, 262 (1st Cir. 2006). "It is not required that experts be 'blue-ribbon practitioners' with optimal qualifications." *Id.* (quoting *United States v. Mahone*, 453 F.3d 68, 71 (1st Cir.

5

2006)). A witness, however, "'should have achieved a meaningful threshold of expertise' in the given area." *Levin v. Dalva Brothers, Inc.*, 459 F.3d 68, 78 (1st Cir. 2006) (quoting *Prado Alvarez v. R.J. Reynolds Tobacco Co. Inc.*, 405 F.3d 36, 40 (1st Cir. 2005)).

Although Defendant focuses on whether Ms. Moninger has sufficient experience, knowledge, and training, to qualify as an expert, he does not appear to dispute that Ms. Moninger was certified as a qualified forensic scientist in the discipline of controlled substances analysis. Rather, Defendant relies on the freshness of the certification before the testing in this case occurred. Based on the Government's proffer, the Court is likely to deem Ms. Moninger qualified to render expert opinions based on her education and the fact of her certification at the time of the testing, because those facts indicate that she has achieved a meaningful threshold of expertise in the area of chemical analysis. The newness of Ms. Moninger's certification is an issue of the weight to give her testimony, not its admissibility.

Moreover, the testimony regarding Ms. Moninger's qualifications will assist the jury in evaluating her credibility and the weight to give her testimony, and thus, is not prejudicial for the jury to hear before the Court determines whether testimony on her opinions and conclusions will be permitted. *Cf. Nichols*, 169 F.3d at 1264 ("Not infrequently the same evidence which is relevant to the issue of establishment of fulfillment of a condition precedent to admissibility is also relevant to weight or credibility, and time is saved by taking foundation proof in the presence of a jury.") (quoting Fed. R. Evid. 104 Adv. Comm. Notes (1994)). The Federal Rules seek to avoid "'unjustifiable expense and delay'" as part of their search for truth and the just determination of proceedings. *Kumho*, 526 U.S. at 152-53 (quoting Fed. R. Evid. 102). In the interest of conserving judicial resources, the Court declines to hold a preliminary evidentiary hearing to determine the qualifications of Ms. Moninger and will instead reserve ruling on the

admission of Ms. Moninger's opinions and conclusions until trial. All necessary foundation must be proved before the Government attempts to elicit her opinions and conclusions. Defendant will have an opportunity to make objections and the Court will finally determine—on the basis of the record as it then exists and outside the presence of the jury—whether the particular evidence is admissible. *See United States v. Williams*, 506 F.3d 151, 161-62 (2d Cir. 2007) (court's performance of gatekeeping function continues until jury hears opinions and conclusions at trial); *Nichols*, 169 F.3d at 1262-64 (holding that trial court did not abuse its discretion in declining to hold preliminary evidentiary hearing and reserving ruling on admissibility of expert opinion until testimony was offered at trial where challenged evidence did not involve any new scientific theory and testing methodology was neither new nor novel, but rather well-known techniques routinely used by chemists to determine elemental composition of unknown samples; issue of whether test results were undercut by flaws in laboratory tests involved credibility and weighing of evidence more suitable for resolution by jury); *United States v. Channon*, Cr. No. 13-966 JCH, 2015 WL 13666980, at *5-7 (D.N.M. Jan. 8, 2015) (denying request for separate, pretrial *Daubert* hearing where Government's proffer of qualifications and descriptions of proposed testimony gave court sufficient evidence to render final decision at trial without admitting prejudicial information).

### 2. Undersheriff Rudy Mora

Defendant does not argue that Undersheriff Mora is not qualified by experience to render the opinions offered. Indeed, the Government's proffer shows Undersheriff Mora has 24 years of law enforcement experience with the New Mexico State Police and Bernalillo County Sheriff's Office, including extensive experience in drug investigations and direct involvement in over 1,000 seizures of drugs, money, and weapons. *See* Rudy Mora CV 1-4, ECF No. 112-1.

Defendant instead argues that the opinion testimony of Undersheriff Mora is cumulative of that of the arresting officer and unfairly prejudicial. A pretrial *Daubert* hearing is not needed to resolve the arguments raised by Defendant regarding Undersheriff Mora's testimony. Based on the proffer of the Government, the Court finds that Undersheriff Mora's experience and training render him qualified to testify to the matters set forth in the Government's Notice. His testimony is relevant to the elements of the case, is not within the common knowledge of the jury, and would assist the jury. *Cf. United States v. Garza*, 566 F.3d 1194, 1196 (10th Cir. 2009) (holding that use of firearms in drug trade is proper subject for expert testimony); *United States v. Sturmoski*, 971 F.2d 452, 459 (10th Cir. 1992) (holding that district court did not abuse its discretion in classifying agent as expert or in admitting his testimony on value of clandestine laboratories, desire of lab operator to protect investment through use of firearms, and tools of drug trade); *United States v. McDonald*, 933 F.2d 1519, 1521-23 (10th Cir. 1991) (holding that district court did not abuse its discretion in allowing expert testimony about significance of quantity of cocaine, packaging of cocaine, and other common items of drug trade because jury could not be expected to understand this evidence without specialized knowledge). The probative value of the evidence outweighs any prejudicial effect, as this is not the type of evidence likely to evoke an emotional response from the jury. The Court can take up objections to specific questions at trial. Again, the United States should not elicit any opinion testimony from Undersheriff Mora until Defendant has an opportunity to make objections and the Court finally determines on the basis of the record as it then exists at trial whether the particular evidence is admissible.

    **3. Thomas Handley and Douglas Lloyd**

The United States asserts in its reply that it provided reports for Mr. Lloyd and Mr. Handley to Defendant, providing the bates numbers for the documents. The record, however, does not reflect the methodology used by either Mr. Handley or Mr. Lloyd for the Court to conduct the requisite *Daubert* inquiry. The Government argues that every published decision to address this issue has found fingerprint evidence admissible. The Court recognizes that courts, including the Tenth Circuit and this Court, have permitted expert testimony on fingerprint evidence. *See United States v. Baines*, 573 F.3d 979, 992 (10th Cir. 2009); *United States v. McCluskey*, CR No. 10-2734 JH, Mem. Op. and Order (ECF No. 1121). Nevertheless, the methods and techniques of fingerprinting evolve, *see Baines*, 573 F.3d at 982 (discussing new and old methods), and studies continue to be conducted concerning error rates in fingerprinting processes, *see McCluskey*, CR No. 10-2734 Mem. Op. and Order at 17-20. That certain evidence has been previously admitted under *Daubert* does not insulate similar evidence from review in later cases when that issue is properly raised. *See Baines*, 573 F.3d at 989 ("Our task is not to determine the admissibility or inadmissibility of fingerprint analysis for all cases but merely to decide whether, on this record, the district judge in this case made a permissible choice in exercising her discretion to admit the expert testimony."). Even after *Baines*, courts in this circuit continue to hold evidentiary *Daubert* hearings on the admissibility of fingerprint evidence. *See, e.g., McCluskey*, CR No. 10-2734 Mem. Op. and Order at 1; United States v. Myers, No. 12-CR-0196-02-CVE, 2012 WL 6152922, at *1 (N.D. Okla. Dec. 11, 2012); *United States v. Gutierrez-Castro*, 805 F.Supp2d 1218, 1220 (D.N.M. 2011). The Court finds that it has an insufficient record on which to make a pre-trial determination of admissibility regarding the reliability of the fingerprint evidence under *Daubert*. Moreover, the presentation of this evidence may be time-consuming and for reasons of efficiency the Court prefers to take the evidence outside the

presence of the jury. The Court will therefore grant Defendant's request for a pretrial determination of admissibility regarding the testimony of Mr. Lloyd and Mr. Handley. The Court will schedule the hearing in a future notice. Counsel for parties should email the Court's courtroom deputy with dates of availability/unavailability of counsel, Mr. Lloyd, and Mr. Handley within seven days of entry of this Memorandum Opinion and Order.

**IT IS THEREFORE ORDERED** that Defendant's request in his Response in Opposition to Government's Notice of Intention to Offer Expert Testimony (**ECF No. 113**) for a *Daubert* hearing is **DENIED** as to Alexandra Moninger and Rudy Mora but **GRANTED** as to Douglas Lloyd and Thomas Handley. The Court **RESERVES RULING** on Defendant's request in his Response in Opposition to Government's Notice of Intention to Offer Expert Testimony (**ECF No. 113**) to exclude the testimony of Douglas Lloyd and Thomas Handley.

_____
**UNITED STATES DISTRICT JUDGE**